IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$19,379.00 IN UNITED STATES CURRENCY, and<br><br>$17,900.00 IN UNITED STATES CURRENCY,<br><br>Defendants. | Civil Action No. 2:21-cv-0978 |

**VERIFIED COMPLAINT FOR FORFEITURE**

AND NOW comes the United States of America, by and through its counsel Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and David Lew, Assistant United States Attorney for the Western District, and respectfully represents as follows:

1.  This is a civil action *in rem* for forfeiture to the United States of $19,379.00 in United States currency, delineated by asset identification number 21-DEA-674931, and $17,900.00 in United States currency, delineated by asset identification number 21-DEA-674932, (collectively the "Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6).

2.  Jurisdiction is predicated upon 28 U.S.C. §§ 1345 and 1355. Venue is proper under 28 U.S.C. §§ 1395 and 1355.

3.  On February 23, 2021, members of the DEA Pittsburgh District Office Task Force Work Group #63 were notified that two individuals, identified as Isaiah Hollis and Christopher Joseph, had proceeded through the primary Transportation and Security Administration screening

checkpoint at Pittsburgh International Airport while in possession of bulk U.S. currency.  Based on law enforcement training and experience, the transportation of large amounts of bulk cash is commonly associated with illegal drug activity.

4.  DEA Task Force Officers ("TFOs") located Hollis and Joseph in an area beyond the screening checkpoint, and the two agreed to be interviewed.  During the interview, Hollis and Joseph made evasive and inconsistent statements regarding the purpose of their travel and source of the Defendant Currency, as described below.

5.  Hollis and Joseph claimed that they had been in Pittsburgh for several days and were flying back home.  Investigators later determined, however, that Hollis was a resident of Georgia but was flying to a different final destination of Miami, Florida.  Joseph was confirmed to be flying to Nashville, Tennessee.

6.  Hollis stated that he was a rapper and was in town to perform two shows at a venue he identified as "B-Live."  Neither Hollis nor Joseph, however, were able to provide an address, point of contact, or telephone number for B-Live, nor any specific dates and times for the alleged performances.  Additionally, COVID-19 restrictions effective in Pennsylvania at the time made live music performances and mass gatherings unlawful.

7.  When asked by investigators about U.S. currency that they were carrying in their luggage, Hollis and Joseph claimed that the currency, including money contained in Joseph's bag, was profit from Hollis' performances in Pittsburgh.

8.  Hollis and Joseph agreed to a consent search of their luggage.  In Hollis' two pieces of carry-on luggage, TFOs located large amounts of U.S. currency concealed between various layers of clothing, consisting predominantly of $20 bills.  The currency was secured

with rubber bands, and a bag containing additional rubber bands was also found. TFOs observed that the currency emitted a strong odor of marijuana.

9. In Joseph's luggage, TFOs also located a large amount U.S. Currency concealed between layers of clothing, which was similarly secured with rubber bands and consisted of mostly $20 bills. The currency also emitted a strong odor of marijuana.

10. Neither Hollis' nor Joseph's luggage contained any invoices, receipts, or other documents related to the bulk currency or Hollis' alleged performances.

11. The currency found in Hollis' carry-on luggage totaled $19,379.00 and was comprised of: (1) $100 bill, (1) $50 bill, (879) $20 bills, (124) $10 bills, (73) $5 bills, and (44) $1 bills.

12. The currency found in Joseph's carry-on luggage totaled $17,900.00 and was comprised of: (21) $100 bills, (14) $50 bills, and (755) $20 dollar bills.

13. Based on law enforcement training and experience, the respective currency denominations and the manner in which the Defendant Currency was bundled are indicative of how drug-money couriers transport illegal drug proceeds. The majority of the bills were in $20 denominations, which is commonly used in street-level drug sales. Additionally, dividing varying amounts of bulk United States currency between individuals is a technique that currency smugglers use when travelling aboard public transportation.

14. Hollis and Joseph claimed that B-Live provided the currency as payment to Hollis. Hollis was unable, however, to identify the person who gave him the cash. Hollis further claimed that his agent had taken care of everything, yet could not provide the name or phone number of his agent.

15. Based on the above investigation, TFOs determined that the Defendant Currency represented money furnished or intended to be furnished in exchange for a controlled substance and seized the funds pursuant to 21 U.S.C. § 881(a)(6).

16. Later that day, TFOs conducted a canine scan of the Defendant Currency using a certified, trained narcotics detection canine, which alerted to the presence of narcotics odor on the Defendant Currency.

17. Further investigation by TFOs determined that "B-Live," the venue where Hollis claimed to have performed, did not exist.

18. Investigation also revealed that Hollis was previously been convicted in February 2020 in the Superior Court of Cobb County, Georgia of possession with intent to distribute marijuana.

19. Following the seizure of the Defendant Currency, the DEA instituted administrative forfeiture proceedings against the currency. Hollis filed a claim for the Defendant Currency in the administrative forfeiture proceedings. As a result, the United States has instituted this civil forfeiture action against the Defendant Currency.

20. Based on the foregoing, the Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes moneys furnished or intended to be furnished by any person in exchange for a controlled substance and/or proceeds traceable to such an exchange and/or moneys used or intended to be used to facilitate any such violation of the Controlled Substances Act.

WHEREFORE, the United States respectfully requests that process of warrant *in rem* issue for the arrest of the Defendant Currency; that Judgment of Forfeiture be entered in favor of the United States for the Defendant Currency; and that the United States be granted such relief as

this Honorable Court may deem just and proper, together with the costs and disbursements of this action.

        Respectfully submitted,

        STEPHEN R. KAUFMAN
        Acting United States Attorney

        */s/ David Lew*
        DAVID LEW
        Assistant U.S. Attorney
        700 Grant Street, Suite 4000
        Pittsburgh, PA 15219
        412-894-7482 (tel)
        412-644-2644 (fax)
        david.lew@usdoj.gov
        PA ID No. 320338 (AFF)

## VERIFICATION

I am a Task Force Agent with the Drug Enforcement Administration and a case agent assigned to this case.

I have read the contents of the foregoing complaint for forfeiture, and the statements contained therein are true and correct to the best of my knowledge and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of July, 2021.

JEFFREY A. SMARACHECK
Task Force Officer
Drug Enforcement Administration